## 32212. MITCHELL v. THE STATE.

HILL, Justice.

The defendant Randy Darnell Mitchell was convicted by a jury of murder and sentenced by the trial judge to life in prison. There was evidence from which the jury was authorized to find that the 19-year-old defendant approached his next door neighbor on her back porch at about five o'clock in the afternoon. His neighbor lived with her husband, a judge, who had not yet returned home from work. The defendant entered her home where he attacked her, because, he said, she looked like his mother. The defendant took the fingernail file she used to defend herself away from her and stabbed her with it more than two dozen times. Four of these blows entered her heart, causing death. The defendant disposed of the fingernail file.

Blood samples taken from the house indicated that in addition to the blood of the victim, there also were present stains of blood type B, rh positive, configuration c,c,D,e,e. Expert testimony indicates that on the average thirteen persons in ten thousand have blood of this type and configuration. The defendant's blood is of this type and configuration.

After discovering defendant's blood type and configuration and obtaining certain other evidence, the authorities confronted the defendant. He confessed and his confession was presented to the jury. The evidence supports the verdict.

1. The defendant contends that he should have been allowed to ask a prospective juror on voir dire the questions: "Would you agree that part of the job of law enforcement officer when a crime has been committed is to secure the scene and assemble all the evidence, both for and against the accused? Do you feel that that standard is too high to hold the police department to?" The trial court did not err in sustaining the prosecutor's objection to the question. *Bethay v. State,* 235 Ga. 371 (4) (219 SE2d 743) (1975), and cits.; Code Ann. § 59-705.

2. By motion to suppress the defendant challenged the admission of evidence obtained under the authority of a search warrant. He contended that the information

placed before the issuing magistrate was too unreliable or too stale to support a finding of probable cause for the issuance of the warrant.

The affidavit contained the following statements relating to probable cause: (1) The deceased was stabbed to death in her home located at . . . between 4:30 and 5:30 p.m. on February 17, 1976. (2) Suspect Mitchell was seen on that date in front of the house next door at about 5:30 p.m. by the victim's husband before and after he discovered the body. (3) Blood stains found at the scene of the murder were determined by the state crime lab to be of two types: O and B positive; the victim had type O; according to military records the suspect has type B positive; the crime lab has determined the polymorphic enzymes and other antigen systems on the type B positive stains found but has not done so as to the suspect's blood. (4) Suspect admitted to affiant that he was incarcerated prior to discharge from the military for assaulting a school teacher; deceased worked for the Atlanta school system. (5) A letter opener, possibly the murder weapon, and deceased's Timex watch were missing after the murder. (6) On March 9, 1976, during interrogation, affiant observed a suspected blood stain on suspect's right trouser leg and a laceration scab on the middle finger of his right hand. (7) The above information was obtained by affiant (a detective), law enforcement officers in Fulton County or personnel of the state crime laboratory.

The affidavit was dated and the warrant was issued on March 11, 1976, after a hearing at which the detective supplemented his affidavit with testimony showing that he had asked the suspect if he would consent to giving a blood sample and the suspect had refused, saying: "If I am guilty, I shouldn't give any blood."

Defendant argues that affiant's statements are conclusions, that the reliability of the information is not established in the affidavit, that the information observed by affiant during the March 9 interrogation of the suspect (26 days after the murder) was unreliable on its face and not shown to be related to this case, that aside from that observation the other information was stale, and that it was not shown to whom (affiant or another) the victim's husband related the information in (2) above.

458

"Observations by fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." United States v. Ventresca, 380 U. S. 102, 111 (85 SC 741, 13 LE2d 684) (1964). See also *Matthews v. State,* 236 Ga. 867, 870 (225 SE2d 896) (1976).

"Staleness" as relates to probable cause is not always measured by the interval between the commission of the crime and the issuance of the search warrant. "Staleness" as relates to probable cause is measured by the probability that the thing to be seized is located at the place to be searched and it involves the interval between (i) the time when the thing to be seized is indicated by the evidence or information to be at the place to be searched and (ii) the time when the search warrant is issued. Edward G. Mascolo, in his article Stale Probable Cause, 43 Conn. B. J. 189 (1969), refers to staleness as "currency of situs" (at page 194). As was stated in Andresen v. State of Maryland, 24 Md. App. 128, 172 (331 A2d 78) (1975), affd. Andresen v. Maryland, 427 U. S. 463, n. 9 at 478: "The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later."

The information in the affidavit was not so stale as to make it unlikely that the suspect's pants observed on March 9 would not be in his home on March 11 when the warrant issued, or on March 12 when it was executed.

The affidavit was adequate and the trial court did not err in overruling the motion to suppress.

3. The defendant urges that his prosecution should have been barred because of alleged prosecutorial misconduct in presenting evidence to the grand jury. Defendant's military records were obtained by court order and filed under seal with the clerk, accompanied by a letter from the National Personnel Records Center conditioning inspection of the records on the defendant's consent or a court order. On the day of the indictment, the court ordered that the records be delivered to the custody of an assistant district attorney and that the defendant and his counsel be afforded access to the records. The

defendant alleges that the grand jury was improperly presented a report of psychological health prepared by a military psychiatrist in connection with disciplinary proceedings involving the defendant.

In *Jordon v. State,* 232 Ga. 749 (9) (208 SE2d 840) (1974), this court held (at p. 756): " 'The evidence which the grand jury receives in finding a true bill is not subject to inquiry.' *Farmer v. State,* 228 Ga. 225 (3) (184 SE2d 647); *Powers v. State,* 172 Ga. 1 (3) (157 SE 195); *Buchanan v. State,* 215 Ga. 791 (2) (113 SE2d 609); *Williams v. State,* 222 Ga. 208, 212 (149 SE2d 449)." The accused has ample opportunity at trial to defend himself in the presence of the court where questions as to evidence can be raised and resolved. Just as we will not consider the sufficiency of the evidence presented to the grand jury, *Powers v. State,* supra, neither will we consider the admissibility, confidentiality, relevance or prejudice of evidence which may have been presented to the grand jury.

4. The defendant contends that the trial court erred in refusing his request made upon the poll of the jury to instruct the jurors that they now have an opportunity to change their verdict. Thereafter, each juror was asked the three questions: "Is this your verdict? . . . Was this your verdict in the jury room? . . . Is this now your verdict?" While it is true that a juror may change his or her vote after entering the courtroom and facing the defendant and the public (*Campbell & Jones v. Murray,* 62 Ga. 86 (7) (1878)), no case has been cited and none has been found requiring that the jury be so instructed. Upon consideration, we find that the questions propounded provide sufficient instruction and ample opportunity for a juror to change his or her mind. See *Person v. State,* 235 Ga. 814 (4) (221 SE2d 587) (1976). Denial of the defendant's request was not error.

5. The trial court conducted a Jackson-Denno hearing and found that the defendant's confession was given voluntarily. In charge, the judge instructed the jury that before it could consider the defendant's confession it must find that the confession was given freely and voluntarily, not induced and not made with the slightest hope of reward or remotest fear of injury. The defendant

contends that the trial court erred in submitting to the jury the issue of the voluntariness of the confession. He contends that after the trial court conducts a hearing in accordance with Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), and finds a confession voluntary, the jury cannot pass again on voluntariness. The decision cited refutes the argument. In Jackson v. Denno, the court found no fault with the procedure which the trial judge utilized here. See also *Batts v. State,* 238 Ga. 664 (235 SE2d 377) (1977) (Hill, J., concurring specially).

6. The defendant contends that the emphasized portion of the charge fails to explain that the burden is on the state to prove the allegations of the indictment beyond a reasonable doubt: ". . . if, *after a consideration of all the evidence in the case, you do not believe the defendant, Randy Darnell Mitchell, is guilty* of the offense of murder as charged in this bill of indictment, or if you entertain a reasonable doubt as to his guilt of that offense, then it would be your duty to acquit him of the offense of murder as charged in this bill of indictment." (Emphasis supplied.) We find no error as alleged.

*Judgment affirmed. All the Justices concur.*

SUBMITTED APRIL 8, 1977 — DECIDED
SEPTEMBER 7, 1977.

*Stanley H. Nylen,* for appellant.

*Lewis R. Slaton,* District Attorney, *Donald J. Stein,* Assistant District Attorney, *Arthur K. Bolton,* Attorney General, *Daryl A. Robinson,* Staff Assistant Attorney General, for appellee.